### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
LISA WASCHOLL                :    Civ. No. 3:19CV01281(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :    June 3, 2020
                             :
-----------------------------x
```

### <u>RULING ON CROSS MOTIONS</u>

Plaintiff Lisa Waschall ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff has moved to reverse the Commissioner's decision, or in the alternative, to remand for a re-hearing. [Doc. #16]. Defendant has filed a motion for judgment on the pleadings, seeking an order affirming the decision of the Commissioner. [Doc. #19].

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative for Remand for a Rehearing [**Doc. #16**] is **DENIED**, and defendant's Motion for Judgment on the Pleadings [**Doc. #19**] is **GRANTED**.

1

I.   **PROCEDURAL HISTORY**[1]

Plaintiff filed concurrent applications for DIB and SSI on May 21, 2015, alleging disability beginning on August 26, 2014. See Certified Transcript of the Administrative Record, Doc. #14, compiled on October 15, 2019, (hereinafter "Tr.") at 260-75. Plaintiff's applications were denied initially on November 20, 2015, see Tr. 122-30, and upon reconsideration on March 16, 2016. See Tr. 134-40.

On July 11, 2018, plaintiff, represented by Attorney Olia Yelner, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Edward F. Sweeney. See generally Tr. 32-66. Vocational Expert ("VE") Michael Dorval appeared and testified by telephone at the hearing. See Tr. 60-65; see also Tr. 392-94. On July 30, 2018, the ALJ issued an unfavorable decision. See Tr. 12-31. On June 21, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's July 30, 2018, decision the final decision of the Commissioner. See Tr. 1-6. The case is now ripe for review under 42 U.S.C. §405(g).

---

[1] Simultaneously with her motion, plaintiff filed a medical chronology, which the Court construes as plaintiff's Statement of Material Facts. [Doc. #16-2]. Defendant filed a Responsive Statement of Facts, which agrees with, and supplements, plaintiff's statement. [Doc. #19-1].

## II.  <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt

whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).**

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV04524(JS), 2018 WL 4783974, at *4 n.4 (E.D.N.Y. Sept. 30, 2018) ("'While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision

under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect.'" (citation omitted)).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to

7

the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   THE ALJ'S DECISION

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from August 26, 2014,

through the date of this decision[.]" Tr. 25; see also Tr. 16. At step one, the ALJ found that plaintiff had "engaged in substantial gainful activity for a period since her alleged onset date[.]" Tr. 17. The ALJ acknowledged that plaintiff's attorney had

> requested a closed period [of disability] from August 2014 until September 2017 ... which she alleged represented the time that the claimant was not engaging in [substantial gainful activity] plus a nine-month trial work period[.] The claimant's [attorney] also acknowledged the possibility of an additional period of eligibility beginning in 2018 due to the claimant's present unemployment[.]

Tr. 18 (citations to hearing testimony omitted). The ALJ concluded, however, that it was not necessary to consider a closed period because plaintiff's applications could "be denied for the entire period since the alleged onset date due to medical-vocational considerations[.]" Id.

At step two, the ALJ found that plaintiff had the severe impairments of "Degenerative disc disease of the lumbar spine and Obesity[.]" Id. (sic). The ALJ found that plaintiff's arthritis, hypothyroidism, anxiety, depression, and opioid abuse disorders were non-severe impairments. See Tr. 18-20.

At step three, the ALJ determined that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 20. The ALJ

specifically found that plaintiff's spinal impairment did not meet or medically equal Listing 1.04 (disorders of the spine) and did not "result[] in an inability to ambulate effectively[.]" Tr. 20. The ALJ next found that plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl.

Id. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. See Tr. 23. At step five, after considering plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy[.]" Tr. 24.

## V.   DISCUSSION

Plaintiff timely filed this action for review and moves to reverse the decision of the Commissioner. [Doc. #16]. Plaintiff asserts: (1) the ALJ erred at step two; (2) the ALJ erred at step three; (3) the ALJ failed to properly evaluate plaintiff's subjective complaints; and (4) the ALJ failed to include certain limitations in the RFC determination. See generally Doc. #16-1 at 8-23. For the reasons that follow, the Court affirms the decision of the Commissioner.

A.   <u>Step Two</u>

Plaintiff contends the ALJ erred at step two by finding that her mental impairments and arthritis were non-severe impairments. <u>See</u> Doc. #16-1 at 8-10. Defendant responds that the ALJ's step two findings are supported by substantial evidence. <u>See</u> Doc. #19 at 4-9.[2]

　　　1. *Applicable Law*

At step two, the ALJ is required to determine the severity of a plaintiff's impairments. <u>See</u> 20 C.F.R. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii); <u>see also</u> 20 C.F.R. §§404.1520(c), 416.920(c). At this step, a plaintiff carries the burden of establishing that she is disabled, and must provide the evidence necessary to make determinations as to her disability. <u>See</u> 20 C.F.R. §§404.1512(a), 416.912(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. <u>See</u> Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" if it constitutes only a slight abnormality having a minimal effect on an individual's ability to perform basic work activities. <u>See</u> <u>id.</u>

---

[2] The Court cites to the page numbers reflected in the document's ECF heading.

*2. Mental Impairments*

Plaintiff asserts that "at times, Ms. Wascholl's mental impairments seemed to be under better control[,]" but that "the longitudinal record shows that for most of the past five years, and during the entirety of the relevant time period, Ms. Wascholl was not doing nearly as well." Doc. #16-1 at 8. Based on medical records from 2015, plaintiff contends that her "anxiety is a severe impairment[.]" Id. at 9. Defendant responds: "Substantial evidence supports the ALJ's conclusion that Plaintiff's mental impairments did not meet the standard of a severe impairment." Doc. #19 at 4.

At step two, the ALJ found that because plaintiff's "anxiety, depression, and opioid abuse disorders do not cause more than minimal limitation in her ability to perform basic mental work activities[] ... they are nonsevere." Tr. 19. In making that determination, the ALJ specifically addressed the "paragraph B" criteria and concluded that plaintiff had mild limitations in each of the four areas of mental functioning considered.[3] Tr. 19-20.

---

[3] The ALJ considered plaintiff's abilities in the following four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. See Tr. 19-20.

Substantial evidence supports the ALJ's conclusion that plaintiff had a mild limitation in her ability to understand, remember, or apply information. See Tr. 19. Plaintiff's providers regularly observed that plaintiff did not present with cognitive defects and/or plaintiff denied any cognitive limitations. See, e.g., Tr. 479, Tr. 481-82, Tr. 539, Tr. 561, Tr. 600, Tr. 606-07, Tr. 610, Tr. 739. During a consultation for plaintiff's dysphagia, plaintiff had "a lot of good questions" that "were answered to her stated satisfaction." Tr. 681. Following a teleclaim with the Social Security Administration, plaintiff was described as "very with it." Tr. 313. The interviewer did not perceive plaintiff to have any difficulties understanding. See id. In her initial Activities of Daily Living report, plaintiff denied that her conditions affected her memory, or her abilities to understand, concentrate, or follow directions. See Tr. 333. Accordingly, the ALJ appropriately determined that plaintiff had mild limitations in her ability to understand, remember, or apply information.

Substantial evidence also supports the ALJ's conclusion that plaintiff had a mild limitation in her ability to interact with others. See Tr. 19. Plaintiff often presented as cooperative or friendly on examination. See, e.g., Tr. 426, Tr. 479, Tr. 481-82, Tr. 488, Tr. 567. During a teleclaim with the Social Security Administration, plaintiff was described as

13

"cooperative and kind and easy to talk with." Tr. 313. In a self-completed Activities of Daily Living report dated June 22, 2015, plaintiff denied problems getting long with others. See Tr. 333; see also Tr. 359 (February 16, 2016, Activities of Daily Living report stating the same information). Plaintiff reported that she "get[s] along with authority figures[]" "very well[,]" and that her employment had never been terminated "because of problems getting along with other people[.]" Tr. 334; see also Tr. 360 (February 16, 2016, Activities of Daily Living report stating the same information). Accordingly, the ALJ appropriately determined that plaintiff had mild limitations in her ability to interact with others.

Next, substantial evidence also supports the ALJ's conclusion that plaintiff had a mild limitation in concentration, persistence, and maintaining pace. See Tr. 19-20. Plaintiff regularly presented to her providers with good attention and concentration. See Tr. 479-94, Tr. 536-38, Tr. 540-41, Tr. 559, Tr. 561, Tr. 565, Tr. 570. Accordingly, the ALJ appropriately determined that plaintiff had mild limitations in her ability to maintain concentration, persistence, and pace.

Last, substantial evidence supports the ALJ's conclusion that plaintiff had mild limitations in the area of adapting or managing oneself. See Tr. 20. Plaintiff generally presented with intact or good judgment and insight. See Tr. 479, Tr. 483, Tr.

14

484, Tr. 488, Tr. 553, Tr. 555, Tr. 559, Tr. 561, Tr. 563, Tr.
565, Tr. 567, Tr. 568. She often denied any psychiatric and/or
anxiety symptoms. See Tr. 553, Tr. 555, Tr. 557, Tr. 559, Tr.
561, Tr. 563, Tr. 565, Tr. 567, Tr. 568, Tr. 681, Tr. 686, Tr.
739. Other records indicate that plaintiff's anxiety was
reasonably or well controlled, and that plaintiff was "mostly"
or "fully" functional. See Tr. 479, Tr. 483, Tr. 484, Tr. 488,
Tr. 561, Tr. 563, Tr. 565. Accordingly, the ALJ appropriately
determined that plaintiff had mild limitations in the area of
adapting or managing oneself.[4]

Having determined that plaintiff suffered just mild
limitations in each of the above-referenced areas, the ALJ
appropriately concluded that plaintiff's mental impairments were
non-severe. See 20 C.F.R. §§404.1520a(d)(1), 416.920a(d)(1) ("If
we rate the degrees of your limitation as ... 'mild,' we will
generally conclude that your impairment(s) is not severe, unless
the evidence otherwise indicates that there is more than a
minimal limitation in your ability to do basic work
activities."). Plaintiff's selective citations to the record do

---

[4] Additional support for the ALJ's paragraph B findings comes
from the conclusions of the non-examining physicians, both of
whom opined that plaintiff had just mild limitations in each
paragraph B domain. See Tr. 74, Tr. 100. The ALJ assigned
significant weight to the opinions of the non-examining
physicians. See Tr. 22. Plaintiff does not challenge the weight
assigned to those opinions.

not accurately portray what is readily apparent in the longitudinal record: that plaintiff did not suffer from a severe mental impairment. Nevertheless, "whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet, 523 F. App'x at 59 (citations omitted). Substantial evidence supports the ALJ's determination that plaintiff's mental impairments were non-severe conditions and there is no error.

### 3. Arthritis

Plaintiff next asserts that the ALJ erroneously found her arthritis to be a non-severe impairment. See Doc. #16-1 at 9-10. Defendant responds: "Substantial evidence also supports the ALJ's finding that Plaintiff's arthritis was nonsevere." Doc. #19 at 9.

At step two, the ALJ summarized various diagnostic imaging and other medical evidence relating to plaintiff's treatment for arthritis. See Tr. 18. The ALJ concluded:

> In sum, given the modest diagnostic imaging and physical examination findings as well as the effectiveness of medication in controlling the claimant's symptoms, the undersigned finds that the claimant's arthritis does not cause more than minimal limitation in her ability to perform basic work activities. Accordingly, it is a nonsevere impairment.

Tr. 18.

As part of his step two findings, the ALJ noted that "after only one appointment, the rheumatologist referred the claimant to her primary care provider for management of her arthritis (Exhibit 17F, Page 19)." Tr. 18. Plaintiff takes issue with this statement, contending that "[t]he ALJ drew negative inferences" and that this fact "is not a reflection of the severity, or lack of severity of Ms. Wascholl's arthritis. Ms. Wascholl was limited in the treatment she received due to her lapsed insurance." Doc. #16-1 at 9. Defendant contends that although plaintiff "may have lost access to her back surgeon due to insurance issues, nothing in Dr. Mandhadi's note indicates that insurance issues prevented further rheumatology treatment." Doc. #19 at 12.

The record supports defendant's characterization of the record. The medical record cited by the ALJ is located at page 694 of the administrative transcript. That record states, in pertinent part:

> Explained about the nature of the disease and also informed her that there are no disease modifying meds out there for OA. Also informed that only things that are known to make any difference in terms of disease progression are weight loss and PT/Reg exercises. ... She will go back to her PCP for further management of her OA. She will contact me if she wants an injection in the thumbs or Knees. She can come to Dr. Walker here at U Conn if she wants Epidural injections.

Tr. 694 (sic). That record does not indicate that plaintiff was unable to continue treatment with a rheumatologist because her

insurance lapsed. Accordingly, plaintiff's argument on this point is misplaced.

Plaintiff also asserts that the ALJ "cherry pick[ed]" the evidence to conclude that her arthritis was a non-severe impairment. Doc. #16-1 at 10. Specifically, plaintiff asserts that "the ALJ relied on very selective portions of just a few treatment notes, specifically those notes that were created on days when Ms. Wascholl was doing a bit better." Id.

Plaintiff's characterization of the ALJ's decision is inaccurate. First, plaintiff fails to acknowledge that at step two, the ALJ also relied on diagnostic imaging results of plaintiff's hips and knees, which "revealed generally benign or mild findings[.]" Tr. 18. The record supports that statement. See, e.g., Tr. 545 ("X-rays of the left hip do not demonstrate significant evidence of osteoarthritis."); Tr. 546 ("Radiographs today are reviewed in detail ... She essentially has a diffuse, predominantly medial and patellofemoral arthrosis of the right knee."); Tr. 572 ("Radiographs taken today ... reveal good preservation of joint spaces in all planes. No compartment of her knee joint appears to be collapsing, and in fact her findings now are most consistent with generalized arthritis. She probably has a mild osteoarthritis problem[.]"); Tr. 574 (Plaintiff "is here for followup on her MRI. She has not had a distinct meniscus tear. She has some mild diffuse degenerative

change. I told her that the next step for her is to lose weight and to stay with anti-inflammatory treatment. She has recently had a corticosteroid injection." (sic)); Tr. 583 (MRI referenced in Tr. 574); Tr. 655 ("Radiographs today do show some progressive arthrosis of the knees. She has right lateral and left medial joint collapse in her knees.").

Plaintiff's examinations across the longitudinal record also support the ALJ's determination at step two. Those examinations generally reflect mild findings. See, e.g., Tr. 522 ("Joints are tender w/o synovitis"); Tr. 544 (examination of hips); Tr. 546 (examination of hips and knees); Tr. 572 ("Her exam today again reveals normal motion with no evidence of crepitus or significant effusion and no localized findings."); Tr. 575 (examination hips and knees); Tr. 577 (examination hips and knees); Tr. 579 (examination of hips and knees).[5] The record is also littered with references that plaintiff's pain was well, or fairly well, controlled. See Tr. 480, Tr. 481, Tr. 483, Tr.

---

[5] With respect to any claimed arthritis in plaintiff's hands, or specifically her thumb, the record also supports the ALJ's finding that any such claimed impairment was non-severe. See, e.g., Tr. 674-75 (plaintiff stopped scheduling appointments for occupational therapy on her thumb); Tr. 688 (normal fine motor skills on examination); Tr. 693 ("Tenderness of the first CMC bilaterally, right worse than the left. No evidence of clinical synovitis in the small joints of the hands or the wrists."); Tr. 699 (examination of plaintiff's hands and wrists was normal, and plaintiff exhibited normal fine motor skills).

555, Tr. 565, Tr. 567, Tr. 568. Accordingly, substantial evidence supports the ALJ's determination that plaintiff's arthritis was a non-severe impairment.[6]

### 4. Harmless Error

Nevertheless, even if the ALJ had erred at step two, any such error would be harmless. If the ALJ finds any impairment is severe, "'the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 402 (D. Conn. 2012) (quoting Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003)), aff'd, 515 F. App'x 32 (2d Cir. 2013). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." Pompa, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)). Thus, as long as the ALJ considers all impairments at later stages of the analysis, failure to find a particular condition "severe" at step two, even if erroneous, constitutes harmless error. See Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) ("Because [non-severe] conditions were considered during the subsequent steps, any error was

---

[6] The ALJ appears to have taken plaintiff's arthritis into account by limiting plaintiff to sedentary work, with the added postural limitations of only occasional stooping, kneeling, crouching, and crawling. See Tr. 20.

harmless."); <u>Rivera v. Colvin</u>, 592 F. App'x 32, 33 (2d Cir. 2015) ("[E]ven assuming that the ALJ erred at step two, this error was harmless, as the ALJ considered both [claimant's] severe and non-severe impairments as he worked through the later steps.").

Here, the ALJ found plaintiff suffered from two severe impairments and continued with the sequential evaluation after step two. <u>See</u> Tr. 18-25. The ALJ considered plaintiff's mental impairments and arthritis at later steps of the sequential evaluation. <u>See</u> Tr. 21 (summarizing plaintiff's testimony, including that related to her arthritis and mental impairments); Tr. 22 ("[T]he record continues to show minimal arthritic findings and normal mental status examinations[.]" (citations to the record omitted)). At later steps of the sequential evaluation, the ALJ also explicitly considered records referencing plaintiff's arthritis and mental impairments. <u>See</u> Tr. 22. Accordingly, the ALJ did not commit reversible error at step two of the sequential evaluation.

B.   <u>Step Three</u>

Plaintiff asserts that the ALJ erred at step three of the sequential evaluation. <u>See</u> Doc. #16-1 at 15-16. Specifically, plaintiff contends that the ALJ erred by failing to discuss the effect of plaintiff's obesity on her knees and back. <u>See</u> <u>id.</u> at 16. Defendant responds that "[t]he ALJ's analysis of whether

21

Plaintiff's impairments met Listing 1.04 was legally correct and supported by substantial evidence." Doc. #19 at 13.

At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 20. The ALJ explained:

> With regard to the claimant's alleged spinal impairment, the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under listing 1.04. Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b).

Id.

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability. The regulations also provide for a finding of such a disability per se if an individual has an impairment that is 'equal to' a listed impairment." DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citation omitted); see also 20 C.F.R. §§404.1520(d), 416.920(d). "At step three, obesity can rise to the level of a disabling impairment under certain circumstances — generally speaking, when it increases the severity of coexisting impairments, particularly those affecting the musculoskeletal, cardiovascular and respiratory systems." Crossman v. Astrue, 783

F. Supp. 2d 300, 309 (D. Conn. 2010) (citation and quotation marks omitted).

Plaintiff bears the burden of establishing that her conditions meet a listing. See Conetta v. Berryhill, 365 F. Supp. 3d 383, 396 (S.D.N.Y. 2019). "To meet the severity criteria of listing 1.04, [plaintiff] must establish spinal arachnoiditis (for purposes of Listing 1.04(B)) pseudoclaudication (for purposes of Listing 1.04(C)) or the combination of nerve root impairment with consistently positive straight leg raise tests (for purposes of Listing 1.04(A))." Rivera v. Berryhill, No. 3:17CV01760(SRU), 2019 WL 4744821, at *11 (D. Conn. Sept. 30, 2019); see also Elderkin v. Berryhill, No. 3:17CV00090(JGM), 2018 WL 704137, at *10 (D. Conn. Feb. 5, 2018) (To establish that plaintiff meets Listing 1.04, she "must demonstrate that she suffers from nerve root compression and each of the four characteristics set forth in the Listing during the relevant time period, as an impairment that manifests only some of those criteria, no matter how severe, does not qualify." (citation and internal quotation marks omitted)). "To show that [s]he meets the criteria, [plaintiff] must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques." Conetta, 365 F. Supp. 3d at 396 (citation and quotation marks omitted).

Here, the ALJ correctly concluded that plaintiff's back impairment does not meet the requirements of Listing 1.04 because the medical evidence of record fails to establish the presence of a nerve root compression, spinal arachnoiditis, or spinal stenosis. See, e.g., Tr. 497 (November 11, 2015, MRI of lumbar spine); Tr. 499 (December 16, 2015 MRI of lumbar spine: "Mild lumbar spondylosis is approximately stable. No significant canal or foraminal stenosis is appreciated at any level."); Tr. 630-31 (September 30, 2016, x-ray of plaintiff's lumbar spine). Plaintiff fails to present any evidence to the contrary.

Rather, plaintiff focuses on the effects of her obesity, which, in combination with her back impairment may "produce such symptoms as to meet or equal a listing." Doc. #16-1 at 16. Again, however, plaintiff

> has failed to show how her symptomology equals in medical significance the missing criteria of Listing 1.04. ... The record is conspicuously silent on the question of what, if any, effects plaintiff's obesity has on her ability to perform work functions, and how it provides a basis to conclude that the combined total effects of her medical condition equal the criteria of Listing 1.04.

Proper v. Astrue, No. 6:10CV01221(GTS), 2012 WL 1085812, at *11 (N.D.N.Y. Feb. 28, 2012), report and recommendation adopted, 2012 WL 1085810 (Mar. 30, 2012).

To the extent plaintiff contends that the ALJ failed to consider her obesity in combination with her back impairment at step three, that argument is without merit. Although

> an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." Berry, 675 F.2d at 469.

Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010).

Here, the ALJ did not explicitly address plaintiff's obesity at step three, but he addressed that condition later in his decision. See Tr. 22. The ALJ stated, in pertinent part, that "the record contains little evidence of any quantifiable impact of the claimant's weight on her overall functioning. Indeed, the claimant did not allege to be limited by this condition at the hearing[.]" Id. Accordingly, by looking to other portions of the ALJ's decision, the Court is able to conclude that the ALJ considered plaintiff's obesity when determining that plaintiff's impairments did not equal Listing 1.04. See Conetta, 365 F. Supp. 3d at 397 ("In this case, the ALJ's determination at step three that [plaintiff] did not meet or equal listing 1.04(A) (disorders of the spine) was supported by substantial evidence in the record and is explained in the

rest of the ALJ's decision."); De Gonzalez v. Berryhill, No. 16CV06723(JMA), 2018 WL 6834474, at *8 (E.D.N.Y. Dec. 28, 2018) ("Contrary to plaintiff's assertion, the ALJ considered ample medical evidence outlined elsewhere in his opinion that supports his finding that Listing 14.02 was not equaled.").

Accordingly, the ALJ's determination that plaintiff's impairments did not meet, or medically equal, Listing 1.04 is supported by substantial evidence.

C.   Credibility Determination/Evaluation of Pain

Plaintiff asserts that her "most disabling impairment is her chronic and daily pain[,]" and that she has "remained largely non-functional due to pain." Doc. #16-1 at 10. Plaintiff contends that the ALJ failed to properly evaluate her subjective complaints of pain. See generally id. at 10-18. Specifically, plaintiff contends that: (1) the ALJ erroneously considered records indicating plaintiff's ability to exercise; and (2) the ALJ failed to discuss the regulatory factors. See id. at 15-18. Defendant responds that the ALJ complied with the applicable regulations, and substantial evidence supports the ALJ's analysis. See Doc. #19 at 14.

1. Applicable Law

Although "the subjective element of pain is an important factor to be considered in determining disability[,]" Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted), an

ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Snell, 177 F.3d at 135.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted). The Regulations set forth a two-step process that an ALJ must follow in evaluating a plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §§404.1529(b), 416.929(b). Second, the ALJ must assess the credibility of plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §§404.1529(c), 416.929(c); see also SSR 16-3P, 2017 WL 5180304

(S.S.A. Oct. 25, 2017) (describing two-step process used to evaluate a claimant's subjective symptoms).[7]

The ALJ should consider factors relevant to plaintiff's symptoms, such as pain, including: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication" taken by claimant to alleviate the pain; (5) "treatment, other than medication," that plaintiff has received for relief of pain or other symptoms; (6) any other measures plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's "functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3). The ALJ must consider all evidence in the case record. See SSR 16-3P, 2017 WL 5180304, at *8.

---

[7] "SSR 16-3p, which became effective March 28, 2016, supersedes SSR 96-7p, which was promulgated in 1996. On October 25, 2017, the SSA republished SSR 16-3p, detailing how to apply the ruling as it relates to the applicable date. Specifically, the SSA indicated that adjudicators should apply SSR 16-3p rather than SSR 96-7p when making a determination on or after March 28, 2016." Kearney v. Berryhill, No. 1:16CV00652(MAT), 2018 WL 5776422, at *5 (W.D.N.Y. Nov. 2, 2018). Because the ALJ's decision is dated July 30, 2018, SSR 16-3p applies here. See id.

*2. Analysis*

The ALJ summarized plaintiff's testimony as follows:

The claimant alleged that she is unable to work due to body pain and stiffness attendant to arthritis[.] She reported that she is unable to stand and sit for extended periods and that she requires the assistance of a cane[.] She testified that her hands often tremble, and she frequently drops thing[.] She stated that she experiences pain in her back that radiates down into her legs[.] She alleged that she is also limited by mental impairments[.] ... As to activities of daily living, the claimant related that she performs only very minimal chores[.] ... Overall, the claimant alleged an inability to engage in any full time employment due to her medical issues.

Tr. 21 (sic) (citations to hearing testimony omitted). After a "careful consideration of the evidence," the ALJ found "that the [plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." Id.

Plaintiff first contends that the ALJ misconstrued the record by stating that "the record evidenced that the claimant went to the gym and lost weight through exercise ... strongly supporting that she has maintained the physical ability to function[.]" Doc. #16-1 at 16 (citing Tr. 22). Rather, plaintiff asserts "[t]here is no indicating in the file that she was

29

actually able to lose any significant amount of weight[.]" Id.
(sic). Defendant responds that "the ALJ did not cite this fact
to show that Plaintiff lost weight; the ALJ properly cited it to
show that Plaintiff's symptoms were not so severe as to preclude
sedentary work." Doc. #19 at 18. Defendant's characterization of
the ALJ's decision is accurate. There are multiple references in
the record to plaintiff using the gym or exercising. See Tr.
482, Tr. 563, Tr. 565, Tr. 567. Accordingly, there is no error
on this point. See, e.g., Mumm v. Comm'r of Soc. Sec., No.
5:06CV00989(GLS)(DEP), 2008 WL 686787, at *13 (N.D.N.Y. Mar. 10,
2008) ("[T]he extent of plaintiff's daily activities," which
included "exercising at a gym up to three times each week,
support the ALJ's finding regarding credibility." (footnote
omitted)).

Plaintiff next asserts that the ALJ failed to "properly
discuss the seven factors relevant to ... pain." Doc. #16-1 at
16. Essentially, plaintiff contends that because the ALJ did not
explicitly discuss each of the regulatory factors, he committed
legal error. In support of this argument, plaintiff relies
primarily on her testimony and subjective complaints made to her
various providers. See id. at 16-18.

Although the ALJ did not entirely credit plaintiff's
complaints of pain, the Court is able to glean from both the
ALJ's decision, and the record, that he appropriately considered

30

the regulatory factors when assessing plaintiff's subjective complaints. See Martes v. Comm'r of Soc. Sec., 344 F. Supp. 3d 750, 767 (S.D.N.Y. 2018) ("An ALJ need not ... explicitly address each and every statement made in the record that might implicate her evaluation of a claimant's credibility as 'the evidence of record permits us to glean the rationale of an ALJ's decision.'" (quoting Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013))).

The ALJ adequately considered plaintiff's complaints of pain. He specifically referenced plaintiff's allegations of hip and knee pain, which "was fairly well or adequately well controlled by medication." Tr 18. He also noted plaintiff's testimony concerning her "body pain and stiffness" and "pain in her back that radiates down into her legs[.]" Tr. 21.

The ALJ specifically addressed the objective medical evidence, which showed benign to moderate findings, and did not support plaintiff's allegations of disabling pain. See Tr. 18, 21 (summarizing diagnostic imaging of plaintiff's back, hips, and knees); see also Section V.A.3. and V.B., supra (summarizing the diagnostic imaging of record). The ALJ also noted examinations where plaintiff showed minimal findings, including "negative straight leg raising and no signs of radiculopathy" and "full strength in her lower extremities, normal posture, and no festination of her gait." Tr. 21; see also Tr. 18 ("While the

claimant did display mild knee effusion at an orthopedic appointment in May 2016, physical examination at her next appointment showed normal motion, no evidence of crepitus or significant effusion, and no localized findings." (citations to the record omitted)). An ALJ may properly discount a claimant's subjective complaints if they conflict with the objective evidence of record. See, e.g., Penfield v. Colvin, 563 F. App'x 839, 840 (2d Cir. 2014) (ALJ did not commit reversible error where "[a]fter extensively detailing the medical evidence and [plaintiff's] testimony, the ALJ afforded her statements only partial credibility because they were inconsistent with the objective evidence in the record." (quotation marks omitted)); Feliciano Velez v. Berryhill, No. 3:18CV01101(SALM), 2019 WL 1468141, at *13 (D. Conn. Apr. 3, 2019) ("[T]he ALJ properly considered the consistency of plaintiff's subjective statements with the objective medical evidence, including diagnostic imaging, which 'displayed generally mild abnormalities in her shoulder, wrist, lumbar and cervical spine, without evidence of stenosis, nerve root compromise, or joint instability." (quotation marks omitted)).

Second, the ALJ explicitly considered plaintiff's treatment and medication, including that: plaintiff's pain was "fairly well or adequately controlled by medication[,]" Tr. 18; plaintiff "took prescription medication and engaged in physical

therapy[,]" Tr. 21; and plaintiff's alleged use of a cane, see Tr. 21-22. "While conservative treatment alone is not grounds for an adverse credibility finding, the ALJ may take it into account along with other factors." Rivera v. Comm'r of Soc. Sec., 368 F. Supp. 3d 626, 646 (S.D.N.Y. 2019), appeal dismissed (May 31, 2019). Here, the ALJ considered plaintiff's apparent conservative treatment, along with other factors, to find her complaints of disabling pain not entirely credible.

The ALJ also considered plaintiff's activities:

> [T]he claimant's financial records and her testimony establish that she performed a sedentary job with End Hunger CT from October 2016 until June 2018[.] At last for 2017, this work was performed at SGA levels[.] Importantly, the record does not evidence any significant change in the claimant's condition around the time she was hired or terminated at this position. Accordingly, the undersigned finds that the claimant's extended period of sedentary employment with End Hunger CT strongly supports that she is able to function within the assigned residual functional capacity.

Tr. 22. That plaintiff was able to engage in such employment undermines her allegations of disabling pain during the relevant time period. See Ortiz v. Comm'r of Soc. Sec., 309 F. Supp. 3d 189, 201 (S.D.N.Y. 2018) ("The fact that [plaintiff] was working at that time is at odds with [plaintiff's] assertion that his pain kept him from working.").

Last, despite plaintiff's argument to the contrary, the ALJ explicitly considered the effects of plaintiff's obesity on her

various impairments, including plaintiff's own testimony that she is not limited by obesity. See Tr. 22.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account ... but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Here, the ALJ properly considered the consistency of plaintiff's subjective complaints with the other evidence of record. See Martin v. Astrue, 337 F. App'x 87, 90 (2d Cir. 2009) (no error where ALJ considered only three of seven regulatory factors); Martone v. Apfel, 70 F. Supp. 2d 145, 153 (N.D.N.Y. 1999) ("[T]he objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations. Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

Where the ALJ has identified specific reasons for his credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir.

2010). Moreover, the ALJ had the opportunity to personally
observe plaintiff and her testimony, something the Court cannot
do. Accordingly, the Court finds no error in the ALJ's
assessment of plaintiff's subjective complaints.

> D.   RFC Determination

Last, plaintiff asserts that the Commissioner did not meet
his burden at step five of the sequential evaluation. See Doc.
#16-1 at 18. This argument, however, does not take issue with
the ALJ's step five finding. Rather, plaintiff argues that the
RFC fails to take into account all of plaintiff's limitations.
See id. at 19-23. Defendant responds that the "RFC finding was
legally correct and supported by substantial evidence." Doc. #19
at 20.

A plaintiff's RFC is "the most [she] can still do despite
[her] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).
The RFC is assessed "based on all the relevant evidence in [the]
case record[,]" including "all of the relevant medical and other
evidence." 20 C.F.R. §§404.1545(a)(1), (3), 416.945(a)(1), (3).

> 1. Simple, Routine Work

Plaintiff first asserts that "[a]lthough the ALJ found that
[her] mental illnesses are non-severe, he still should have
limited her to simple, routine work." Doc. #16-1 at 20. For
reasons previously stated, substantial evidence supports the
ALJ's decision to not include any such limitations. See Section

35

V.A.2., _supra_. Importantly, plaintiff regularly denied any symptoms of depression, anxiety, or other psychological conditions. _See_ Tr. 553, Tr. 555, Tr. 557, Tr. 559, Tr. 561, Tr. 563, Tr. 565, Tr. 567, Tr. 568, Tr. 681, Tr. 686, Tr. 739. She also regularly presented with good attention and concentration. _See_ Tr. 479-94, Tr. 536-38, Tr. 540-41, Tr. 559, Tr. 561, Tr. 565, Tr. 570. Accordingly, there is no error on this point.

2. _Hand Use_

Plaintiff next contends that the ALJ should have included some unspecified manipulative limitations in the RFC determination. _See_ Doc. #16-1 at 21-22. Defendant responds that "[t]he ALJ properly declined to assess additional limitations relating to use of hands." Doc. #19 at 22.

In support of her assertion, plaintiff relies primarily on records reflecting her subjective complaints. _See_ Doc. #16-1 at 21-22. For reasons previously stated, the ALJ properly assessed plaintiff's credibility. Nevertheless, substantial evidence supports the ALJ's decision to not include manipulative limitations in the RFC determination. Although plaintiff underwent some occupational therapy for alleged thumb pain in April 2016, examinations of plaintiff's hands reflected normal to mild findings, including normal fine motor skills. _See_ Tr. 688, Tr. 693, Tr. 699. During the relevant time period, plaintiff worked for over a year at a job involving computer

data entry. See Tr. 40-41. Finally, the opinions of the non-examining physicians, each of whom opined that plaintiff had no manipulative limitations, also support the ALJ's decision to not include manipulative limitations in the RFC determination. See Tr. 76, Tr. 102. Accordingly, there is no error on this point. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (Once the ALJ finds facts, the Court "can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994))); Johnson v. Berryhill, No. 3:16CV01050(SRU), 2017 WL 2381272, at *6 (D. Conn. Jun. 1, 2017) (rejecting plaintiff's argument that an ALJ erred by failing to include additional limitations in plaintiff's RFC because plaintiff did not show that a reasonable factfinder would have to conclude otherwise).

### 3. Sit/Stand/Rest Option and Off-Task Behavior

Last, plaintiff asserts: "The ALJ should also have included periods of rest, leg elevation, and general off-task behavior in his RFC description." Doc. #16-1 at 22. Defendant responds that "[t]he ALJ properly declined to assess limitations for additional rest breaks and/or time off-task." Doc. #19 at 24.

In support of her position, plaintiff again primarily relies on her testimony and other subjective complaints, see Doc. #16-1 at 22, which the ALJ properly considered, and

partially rejected. Plaintiff fails to identify any medical evidence to support her position that the ALJ should have included such restrictions in the RFC. Indeed, for reasons previously stated, the medical record fails to support a finding that the ALJ should have included any limitations for off-task behavior. See, e.g., Tr. 420 Tr. 472, Tr. 600, Tr. 683, Tr. 693. Nor does the record support a finding that the ALJ should have included periods for rest or leg elevation. Accordingly, there is no error on this point. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (An ALJ is "entitled to rely not only on what the record says, but also on what it does not say.").

## VI.   CONCLUSION

For the reasons set forth herein, plaintiff's Motion to Reverse the Decision of the Commissioner [**Doc. #16**] is **DENIED**, and defendant's Motion for Judgment on the Pleadings [**Doc. #19**] is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 3rd day of June, 2020.

```
                              /s/
                    _____
                    HON. SARAH A. L. MERRIAM
                    UNITED STATES MAGISTRATE JUDGE
```